IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATTY KOZISEK, ) | |
| ) | 8:06CV512 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| VISHAY DALE ELECTRONICS, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for summary judgment, Filing No. 28. This is an action for discrimination in employment under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), for retaliation for exercise of rights protected under the ADA, and for "hostile environment harassment" gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1] Plaintiff also asserts a state law claim for constructive discharge.

**I.   Background**

In her complaint, plaintiff alleges that her former employer, Vishay Dale, Inc. (hereinafter, "Vishay Dale"), reduced her wages because of a disability. She alleges that Vishay Dale transferred her to a position that did not provide incentive pay after she suffered a disabling back injury. She also asserts that Vishay Dale retaliated against her for filing a workers' compensation claim. She alleges that her work environment was intolerable as the result of a supervisor's and co-workers' unwelcome accusations of a

---

[1] The Americans with Disabilities Act incorporates the powers, remedies and procedures set forth in Title VII and the regulations promulgated thereunder. 42 U.S.C.A. § 12117.

sexual nature based on her gender. She also alleges that the intolerable working conditions amounted to a constructive discharge.

In its motion for summary judgment, Vishay Dale argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. It contends that the uncontroverted evidence shows that Kozisek does not have a disability that substantially interferes with a major life activity, and has not suffered an adverse employment action so as to be entitled to recovery under the ADA. It further asserts that Kozisek's ADA wage claim is not timely and also contends that there is no temporal connection between any protected activities and the loss of Kozisek's job.

With respect to the gender discrimination claim, Vishay Dale asserts that uncontroverted evidence shows that the alleged harassment was not based on sex and did not affect a term or condition of Kozisek's employment. It further asserts that Kozisek cannot show that Vishay Dale knew or should have known of the alleged harassment and failed to take proper remedial action. Vishay Dale also contends that Kozisek was not constructively discharged.

The parties agree that the following facts are undisputed. *See* Filing Nos. 29, Defendant's Brief in Support of Motion for Summary Judgment; Filing No. 32, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Kozisek first became employed at Vishay Dale in November 1992. She held the position of "WSR test packer" at Vishay Dale from January 1997 through October 2002. As a test packer, her duties included testing resistors, watching the machine while it packed, and entering data into a computer.

Kozisek injured her lower back on or about July 13, 2001, and filed a workers' compensation claim in connection with that injury. Vishay granted the plaintiff the accommodation of a light duty assignment for a short period of time following her 2001 back injury and the plaintiff never requested any other accommodation for that injury. Kozisek claims to have injured her lower back a second time on or about July 25, 2002, also while working at Vishay Dale as a WSR test packer. On or about October 17, 2002, Kozisek's physician restricted her duties for ten days, instructing that she avoid repetitive stooping, twisting, or bending and should not engage in any heavy lifting. The plaintiff reported her work restrictions to her supervisor at Vishay Dale and was again assigned to light duty. The plaintiff later requested another accommodation, asking to work in a position that required more activity, but less lifting, which Vishay Dale granted. She subsequently reached maximum medical improvement and was given the rating of a thirteen-percent permanent physical impairment of her body as a whole. The plaintiff's physician then imposed permanent work restrictions on Kozisek, prohibiting her from lifting more than fifty pounds at once or more than twenty pounds repetitively, and from continuous twisting, bending, stooping, squatting or climbing. Kozisek admits that Vishay Dale accommodated all of the plaintiff's requests for accommodation of her disability in a reasonable and prompt manner.

The plaintiff contends that she began experiencing conflicts with another Vishay employee, Marci Romshek, sometime in August 2004. The conflict centered on purported computer images of Kozisek's husband and rumors of an extramarital affair and sexually-transmitted diseases. At some point thereafter, Kozisek met with supervisors and Human Resource personnel to discuss the conflict. On or about October 12, 2004, Kozisek

suffered a panic attack, left work and went to the hospital. She left a note for a receptionist to deliver to the Human Resources Department stating that the harassment she was suffering affected her mentally and physically. She was granted leave under the Family and Medical Leave Act ("FMLA") from October 2004 to January 1, 2005. Kozisek admits that no one at Vishay Dale ever "gave her a hard time" about the FMLA leave. Filing No. 31, Index of Evid., Parts 2-4, Deposition of Patricia Kozisek ("Kozisek Dep.") at 162. The plaintiff continued to receive her paychecks while she was out on FMLA leave from Vishay. *Id.* at 212.

On December 13, 2004, Vishay Dale sent the plaintiff a letter stating that her FMLA leave would expire on January 1, 2004, and that she would be expected to be at work on January 3, 2004, unless she requested a further extension and could provide updated medical reports. *Id.,* Part 4, Exhibit ("Ex.") B, Letter. She was also offered the option of taking personal leave for 30 days. *Id.* The letter did not explicitly state that she would be terminated if she did not return to work. *See id.*

Kozisek admits that she knew that Vishay Dale had a sexual harassment policy as of 2002 and she possessed a copy of the policy. It is undisputed that Kozisek began working at Linwood Artificial Breeders on December 22, 2004, while she was still on paid FMLA leave at Vishay Dale. *Id.* at 15-19, 188-89. The plaintiff submitted a letter of resignation to Vishay Dale on December 29, 2004. *Id.* at 186. The plaintiff received payment from Vishay after she resigned. *Id.* at 212-213.

Kozisek filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") on December 7, 2004, alleging discrimination on the basis of

4

gender and disability. The EEOC issued a "right to sue" letter on April 26, 2006, after NEOC dismissed her charge. The plaintiff filed suit against Vishay on July 25, 2006.

## II. DISCUSSION

### A. Summary Judgment standards

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The burden of establishing that no genuine issue of material fact exists is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if the moving party does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987). However, "when a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e)(2). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Although "summary judgment must be used with caution in discrimination cases due to the fact-specific nature of each case, it nonetheless may be proper 'when a plaintiff fails to establish a factual dispute on an essential element of [the] case.'"  *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1073-74 (2006) (*quoting Simpson v. Des Moines Water Works,* 425 F.3d 538, 542 (8th Cir.2005)); *see also Peterson v. Scott County,* 406 F.3d 515, 520 (8th Cir. 2005) (noting that "[s]ummary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference").

### B.   ADA

The ADA prohibits employers from discriminating against a "qualified individual with a disability," defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. §§ 12112(a), 12111(8).  To make a *prima facie* case of employment discrimination under the ADA, the plaintiff must establish that she is disabled within its meaning, that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and that she suffered an adverse employment action in circumstances that give rise to an inference of unlawful discrimination based on disability.  *Dropinski v. Douglas County, Neb.,* 298 F. 3d 704, 706-07 (8th Cir. 2002).  The plaintiff bears the burden to prove she is disabled.  *Burchett v. Target Corp.,* 340 F.3d 510, 517 (8th Cir. 2003).

The existence of a disability is to be determined on a case-by-case basis.  *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197 (2002).  To show that she is

disabled under federal law, an individual must show that she: (1) has a physical, sensory, or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C). A medical diagnosis satisfies the burden of identifying a physical impairment. *Napreljac v. John Q. Hammons Hotels, Inc.,* 505 F.3d 800, 804 (8th Cir. 2005).

When inquiring whether a disability substantially limits a major life activity, the court "must examine the extent of the limitation caused by her impairment in terms of [the plaintiff's] own experience." *Albert v. Smith's Food & Drug Ctrs, Inc.,* 356 F.3d 1242, 1250 (8th Cir. 2004). The term "substantially limits" means: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(i)&(ii); *Albert,* 356 F.3d at 1250. Major life activities are "activities that are of central importance to daily life." *Williams,* 534 U.S. at 197. They include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working. *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948 (8th Cir. 1999). "The terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled.'" *Gretillat v. Care Initiatives,* 481 F.3d 649, 652 (8th Cir. 2007) (*quoting Williams,* 534 U.S. at 197).

A court should consider the nature, severity, duration, and long-term impact of the impairment when deciding whether that impairment substantially limits a major life activity.

*Gretillat,* 481 F.3d at 652.   The impact of the impairment must also be permanent or long term.  *Willliams,* 534 U.S. at 198; *Samuels v. Kansas City, Missouri Sch. Dist.,* 437 F.3d 797, 802 (8th Cir. 2006).

The basic motor function of lifting is one of a constellation of basic motor functions that together represent a major life activity. *Nuzum v. Ozark Automotive Distribs., Inc.,* 432 F.3d 839, 844 (8th Cir. 2005).  A lifting restriction translates to a substantial limitation only on proof that "the net effect of the impairment is to prevent or severely restrict the plaintiff from doing the set of activities that are 'of central importance to most people's daily lives,' or from working." *Id.* at 846 (citation omitted).

In this circuit, working is recognized as a major life activity.   *See Breitkreutz v. Cambrex Charles City, Inc.,* 450 F.3d 780, 784 (8th Cir. 2006); *Nuzum,* 432 F.3d at 844; *Webner v. Titan Distrib., Inc.,* 267 F.3d 828, 834-35 (8th Cir. 2001); *Fjellestad,* 188 F.3d at 949.  However, when a plaintiff claims an impairment has substantially limited the life activity of working, he or she must satisfy a "specialized test."  *Schuler v. SuperValu, Inc.,* 336 F.3d 702, 704 (8th Cir. 2003); *see Sutton v. United Airlines, Inc.,* 527 U.S. 471, 492 (1999) (to be substantially limited in the major life activity of working, one must be precluded from more than one type of job, a specialized job, or a particular job of choice).

To satisfy the standard, a diminishment in "'overall employment opportunities'" must exist.  *Breitkreutz,* 450 F.3d at 784.  An individual is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  *Sutton,* 527 U.S. at 492; *Kellogg v. Union Pacific R.R. Co.,* 233 F.3d 1083, 1087 (8th Cir. 2000).  The inability to perform a single, particular

8

job does not constitute a substantial limitation in the major life activity of working. *Id.* In the Eighth Circuit, this standard is interpreted strictly. *See, e.g., Samuels,* 437 F.3d at 801-03; *Wood v. Crown Redi-Mix, Inc.,* 339 F.3d 682, 686 (8th Cir. 2003) (plaintiff not substantially limited in the major life activity of working where, although he was prevented from driving a cement-mix truck, he could drive other trucks); *Schuler,* 336 F.3d at 705 (plaintiff, a sufferer of epilepsy, not substantially limited in the major life activity of working where he could not perform the essential functions of a warehouse order selector, but had not shown an inability to perform other jobs utilizing his skills).

Kozisek relies on her limitations on lifting, sitting, squatting, and bending to show that she is substantially limited in major life activities. The record demonstrates that, although her physician placed restrictions on lifting and movement, she has been able to continue working at a job utilizing her skills. Kozisek's impairments do not limit the major life activities and she cannot be considered disabled under the ADA. Accordingly, because the uncontroverted evidence shows that she cannot meet her burden of presenting a prima facie case of disability discrimination, Vishay Dale is entitled to judgment as a matter of law.[2]

### C. Retaliation

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an employee, for opposing "any practice made an unlawful employment practice <u>by this subchapter</u>." 42 U.S.C. § 2000e-3 (emphasis added).

---

[2] In light of this disposition, the court need not address the defendant's assertion that Kozisek's wage claim is time-barred. the court notes, however, that the Supreme Court recently ruled that "any unlawful employment practice, including those involving compensation, must be presented to the EEOC within the period prescribed by statute [180 days]." *Ledbetter v. Goodyear Tire & Rubber Co.,* — U.S. —, —, 127 S. Ct. 2162, 2177 (2007).

Conduct protected under the statute includes opposing ongoing discriminatory treatment as well as participating in an ADA or Title VII proceeding by filing a formal charge with the EEOC.  *See, e.g., Wentz v. Maryland,* 869 F.2d 1153, 1155 (8th Cir. 1989) (applying Title VII retaliation standards to an age discrimination claim).

In the absence of direct evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973), applies to a retaliation claim.  *Bakhtiari v. Lutz,* 507 F.3d 1132, 1136 (8th Cir. 2007).  The elements of a retaliation claim under Title VII or the ADA are:  (1) that the employee engaged in protected opposition to discrimination, (2) that the employee suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action.  *Green v. Franklin Nat'l Bank of Minneapolis,* 459 F.3d 903, 914 (8th Cir. 2006).

Plaintiff's retaliation claim is premised on her assertion that Vishay Dale retaliated against her for filing a workers' compensation claim.  Filing a workers' compensation claim is not protected under the ADA.  Although that activity may be protected activity under state law, it does not come within the ambit of the Americans with Disabilities Act or Title VII.  *See, e.g., Trosper v. Bag 'n Save,* 734 N.W.2d 704, 707 (Neb. 2007) (regarding public policy exception to Nebraska's at-will employment doctrine for claim of retaliation under Nebraska Workers' Compensation Act); *Napreljac,* 505 F.3d at 803-04 (addressing Iowa common law claim for workers' compensation retaliation).  Accordingly, defendant is entitled to summary judgment on the retaliation claim.

### D. Gender Discrimination

Title VII prohibits employers from discriminating against any individual based on sex with respect to their compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1); *Brenneman v. Famous Dave's of America, Inc.,* 507 F.3d 1139, 1143 (8th Cir. 2007). Discrimination based on sex that creates a hostile or abusive working environment violates Title VII. *Id.* In order to make a prima facie case for a hostile working environment based on a supervisor's sexual harassment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of her employment. *Id.* "To constitute a hostile work environment, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gordon v. Shafer Contracting Co.,* 469 F.3d 1191, 1195 (8th Cir. 2006).

In cases of supervisor harassment that do not involve a tangible employment action, an employer is vicariously liable unless the employer demonstrates that it is entitled to the *Ellerth-Faragher* affirmative defense. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08 (1998). This affirmative defense has two elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Brenneman,* 507 F.3d at 1145. The first element has two prongs: prevention and correction. *Id.* Under the prevention prong, the employer must have exercised reasonable care to prevent sexual harassment. *Id.* Under the

correction prong, the employer must have promptly corrected any sexual harassment that occurred. *Id.*

The court's review of the documents submitted in support of and opposition to the defendant's motion show that there are genuine issues of material fact with respect to the elements of these claims and defenses. Resolution of the issues will require an assessment of credibility. Accordingly, defendant's motion for summary judgment on the plaintiff's hostile-environment gender discrimination claim will be denied.

### E.    Constructive Discharge

In her complaint, Kozisek asserts "constructive discharge" as a separate claim or cause of action. There is no freestanding cause of action for "constructive discharge" in Nebraska—Nebraska is an at-will employment state. *See Trosper,* 734 N.W.2d at 706-07 ("Unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason"). It appears to the court, however, that the allegations are properly construed as either an element of Kozisek's gender discrimination claim (an adverse employment action) or as a measure of damages for the alleged violation. To the extent that the alleged constructive discharge is viewed as a separate claim, defendant's motion for summary judgment will be granted. There remain genuine issues of material fact on the issue of whether defendant's conduct rendered the plaintiff's working conditions so intolerable that a reasonable person would be compelled to resign, so as to entitle the plaintiff to recover an award of backpay or reinstatement as an element of damages for gender discrimination. *See, e.g., Maney v. Brinkley Mun. Waterworks and Sewer Dept.,* 802 F.2d 1073, 1076 (8th Cir. 1986); *FBG*

*Serv. Corp. v. Anderson,* 1993 WL 191777, *7-*8 (Neb. App. 1993) (unreported opinion). Accordingly,

IT IS ORDERED that defendant's motion for summary judgment (Filing No. 28) is granted with respect to plaintiff's claims of disability discrimination (First Cause of Action), retaliation under the ADA (Second Cause of Action), and constructive discharge (Fourth Cause of Action), and denied with respect to plaintiff's hostile-environment/harassment gender discrimination claim (Third Cause of Action).

DATED this 14th day of February, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge